IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JAD ALWAWI, | CASE NO. 3:26-cv-375 |
| Petitioner, | DISTRICT JUDGE<br>JAMES R. KNEPP II |
| vs. | |
| SECRETARY OF THE U.S.<br>DEPARTMENT OF HOMELAND<br>SECURITY, *et al.*, | MAGISTRATE JUDGE<br>JAMES E. GRIMES JR. |
| Respondents. [1] | **REPORT AND<br>RECOMMENDATION** |

Petitioner Jad Alwawi has filed a petition under 28 U.S.C. § 2241 for a writ of habeas corpus. Doc. 1. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Court grant Alwawi's petition.

---

[1]     The proper respondent in an immigration habeas for a noncitizen detained in this District is the Field Director of the Detroit Field Office for U.S. Immigration and Customs Enforcement. *Mendoza v. Raycraft*, No. 4:25-cv-2183, 2025 WL 3157796, at *8 (N.D. Ohio Nov. 12, 2025). The Court should therefore dismiss from this action as to the Attorney General, the Secretary of the Department of Homeland Security, and the Department of Homeland Security. *See Roman v. Ashcroft*, 340 F.3d 314, 320 (6th Cir. 2003).

**Background**

*Factual background and Immigration Court proceedings*

Alwawi is a native and citizen of the Palestinian Territories. Doc. 1, at 3; Doc. 7-1, at 1.[2] He arrived in the United States in November 2014, as a nonimmigrant tourist with permission to remain for six months. Doc. 1, at 3; Doc. 7-1, at 1. In December 2016, after Alwawi failed to depart the United States, his then-spouse filed a Form I-130, petition to classify him as an "immediate relative." Doc. 7-1, at 2; *see* 8 U.S.C. § 1154(a); 8 C.F.R. §§ 204.1(a)(1), 204.2(a)(1). At the same time, Alwawi filed a Form I-485 application to adjust his status to that of a conditional lawful permanent resident.[3] Doc. 7-1, at 2; *see* 8 U.S.C. §§ 1186a(a)(1), 1255(a). Immigration authorities later denied Alwawi's spouse's petition, after Alwawi withdrew his petition to adjust his status. Doc. 7-1, at 2.

At some point, Alwawi remarried. His new spouse filed another Form I-130 on his behalf in February 2021 and Alwawi filed another Form I-485. *Id.* Immigration authorities denied both petitions in April 2022. *Id.* In December 2023, the Board of Immigration Appeals dismissed Alwawi's appeal of the denial of the petitions. *Id.*; *see* 8 U.S.C. § 1186a(c)(3)(D); 8 C.F.R. § 1216.4(d)(2).

---

[2]    The Court cites the CM/ECF-generated page numbers at the top of the parties' filings.

[3]    When an alien spouse adjusts his or her status based on a marriage to a United States citizen, the alien's status is adjusted on a conditional basis. *See* 8 U.S.C. § 1186a; *Bilali v. Gonzales*, 502 F.3d 470, 471–72 (6th Cir. 2007).

2

For reasons that are unclear, immigration authorities did not immediately place Alwawi in removal proceedings. Instead, they waited until July 2025 to issue him a Notice to Appear placing him in removal proceedings. *See* 8 U.S.C. §1229(a); Doc. 7-2, at 2. The Notice to Appear alleged removability under 8 U.S.C. § 1227(a)(1)(B), as an alien who remained in the United States longer than permitted.[4] *Id*. at 1. It also directed Alwawi to appear before an immigration judge for a hearing in Cleveland on August 19, 2025. *Id*.

Alwawi failed to appear for his immigration hearing. *See* Doc. 7-3. As a result, on August 19, 2025, an immigration judge sustained the charge of removability and ordered Alwawi removed *in absentia*. *Id*.; *see* 8 U.S.C. § 1229a(b)(5)(A).

On September 26, 2025, Alwawi moved through counsel to reopen. Doc. 7-4; *see* 8 U.S.C. § 1229a(b)(5)(C) (providing that an *in absentia* removal order can only be rescinded on the filing of a motion to reopen meeting certain listed requirements). An immigration judge denied Alwawi's motion on October 20, 2025, finding that Alwawi failed to meet the requirements of Section 1229a(b)(5)(C).[5] Doc. 7-5. Alwawi filed an appeal with the Board, Doc. 7-6,

---

[4]    The Notice to Appear alleged removability under Section 237(a)(1)(B) of the Immigration and Nationality Act. Section 237 of that Act is codified at 8 U.S.C. § 1227. *See Seldon v. Garland*, 120 F.4th 527, 532 (6th Cir. 2024).

[5]    The order cited Section 240(b)(5)(C) of the Immigration and Nationality Act, which is codified at 8 U.S.C. § 1229a(b)(5)(C). *See Reyes v. Holder*, 714 F.3d 731, 737 n.15 (2d Cir. 2013). The immigration court served this order on October 21, 2025. Doc. 7-5, at 2.

which set a briefing schedule making the parties' briefs due on March 17, 2026, Doc. 7-7.

U.S. Immigration and Customs Enforcement took Alwawi into custody on January 6, 2026. Doc. 1, at 1; Doc. 7-1, at 2. Alwawi filed this habeas petition on February 13, 2026. *See* Doc. 1.

*Alwawi's habeas petition*

This District and others have seen an increase in habeas petitions involving non-citizen petitioners challenging whether immigration official may detain those non-citizens without bond pending their removal hearings. This case is different. Alwawi has a final order of removal and is subject to removal.

In his petition, Alwawi briefly presents two arguments. First, he says that his removal is "not reasonably foreseeable" and thus his "ongoing prolonged detention violates the Due Process Clause." Doc. 1, at 7. Second, he implies in his petition and then says in his traverse that his continuing detention violates 8 U.S.C. § 1231(a). *Id.* As is discussed below, Alwawi is partly right.

**Legal Standard**

Under 28 U.S.C. § 2241, a district court may grant a writ of habeas corpus to any person who demonstrates that he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). An alien may challenge the lawfulness of immigration detention through a writ of habeas corpus. *See INS v. St. Cyr*, 533 U.S. 289, 301 (2001) (observing that "the writ

of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Although the Court lacks jurisdiction in habeas over issues such as challenges to the legality of a removal order, *see Hamama v. Adducci*, 912 F.3d 869, 876 (6th Cir. 2018), it has jurisdiction to consider whether a noncitizen is lawfully detained, *see Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117 (2020) (describing habeas corpus as the "'appropriate remedy to'" determine the legality of a person's custody) (quoting 3 Commentaries on the Constitution of the United States § 1333, p. 206 (1833)).

**Discussion**

*1. The Court has jurisdiction over Alwawi's petition.*

Respondents argue that under 8 U.S.C. § 1252(b)(9) and (g), this Court lacks jurisdiction to review Alwawi's petition. *See* Doc. 7, at 3–7. Before discussing these provisions, it is worth noting that Section 1252 is entitled "judicial review of orders of removal." While "section headings cannot limit the plain meaning of a statutory text, 'they supply cues' as to what Congress intended." *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 583 U.S. 366, 380 (2018) (citations omitted). So it is questionable at the start whether any of the provisions in Section 1252 would apply to Alwawi, who is not challenging an order of removal.

5

In any event, Respondents argue that "Section 1252(g) categorically bars jurisdiction over '*any* cause or claim by or on behalf of any alien *arising from* the decision or action by the [Secretary of Homeland Security] to *commence proceedings*, adjudicate cases, or execute removal orders against any alien.'" Doc. 7, at 3 (quoting 8 U.S.C. § 1252(g)). Respondents also argue that "[u]nder § 1252(b)(9), 'judicial review of all questions of law … including interpretation and application of statutory provisions … arising from any action taken … to remove an alien from the United States' is only proper before the appropriate court of appeals in the form of a petition for review of a final removal order." *Id.* at 4 (citing 8 U.S.C. § 1252(b)(9)).

Respondents are mistaken. *See Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (the right of a "person detained by the government" to "challenge the legality of h[er] confinement through a petition for a writ of habeas corpus …. extends to those persons challenging the lawfulness of immigration-related detention") (citing *Zadvydas*, 533 U.S. at 688, and *Demore*, 538 U.S. at 517).

First, Section 1252(g) does not bar, categorically or otherwise, Alwawi's claims. Section 1252(g) provides in relevant part that:

> [e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, … no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to

6

> commence proceedings, adjudicate cases, or execute
> removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). Based on this statute, Respondents argue that "[t]he Secretary of Homeland Security's decision to *commence removal proceedings* includes the decision to detain pending such removal proceedings." Doc. 7, at 3. But Respondents only come to this position by ignoring what the Supreme Court has said on this matter. For starters, in *Zadvydas*, the Supreme Court said that Section 1252(g) was among several statutes that had nothing to do with whether a court could review a petition challenging a non-citizen's post-removal-order detention. 533 U.S. at 687–88.

Further, the Supreme Court has cautioned that the jurisdictional limits detailed in Section 1252(g) have a "narrow" reach, and apply only to "review of cases 'arising from' decisions 'to commence proceedings, adjudicate cases, or execute removal orders.'" *Dep't of Homeland Sec. v. Regents of the Univ. of Calif.*, 591 U.S. 1, 19 (2020) (explaining that the Supreme Court has "previously rejected as 'implausible' the Government's suggestion that § 1252(g) covers 'all claims arising from deportation proceedings' or imposes a 'general jurisdictional limitation'") (quoting *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999)).

Indeed, the Supreme Court has also made clear that Section 1252(g) "applies" "narrow[ly] … only to three discrete actions that the Attorney General may take": the "'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *American-Arab Anti-*

7

*Discrimination Comm*, 525 U.S. at 482. Outside of these three categories, the Supreme Court has noted that there are "many other decisions or actions that may be part of the deportation process," such as "the decisions to open an investigation, to surveil the suspected violation, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order." *Id.* In this way, Section 1252(g) is "not relevant" to the consideration of a court's jurisdiction to consider an immigration habeas petition beyond the three enumerated events. *See St. Cyr*, 533 U.S. at 311 n.34 (relying on *American-Arab Anti-Discrimination Comm*).

A three-justice plurality of the Supreme Court has more recently affirmed the narrow construction of Section 1252(g). *See Jennings v. Rodriquez*, 583 U.S. 281, 294 (2018) (plurality opinion). The plurality reiterated that the Court "did not interpret [the phrase 'arising from'] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, [the Court] read the language to refer to just those three specific actions themselves." *Id.* at 294.

Here, contrary to what Respondents imply, Doc. 7, at 3, Alwawi's "detention does not arise from the government's 'commenc[ement] of proceedings,' which begins with the filing of an NTA in an immigration court." *Mahdawi v. Trump*, 136 F.4th 443, 450–51 (2d Cir. 2025) (quoting *Ozturk v. Hyde*, 136 F.4th 382, 396–97 (2d Cir. 2025)). Indeed, given that Alwawi's

8

removal order was final when issued, 8 C.F.R. § 1241.1(e), which was well before Alwawi was detained, Respondents did not detain Alwawi until after his removal proceedings were concluded.

Respondents' jurisdictional argument regarding Section 1252(g) fails. *See Kong v. United States*, 62 F.4th 608, 615 (1st Cir. 2023) ("there is no way to read [Section 1252(g)'s] legislative history as evincing 'a clear statement of congressional intent to repeal habeas jurisdiction' over all detention claims. To the contrary, § 1252(g) was passed with the understanding that collateral challenges to the legality of a petitioner's detention would not constitute 'cause[s] or claim[s]' that 'aris[e] from the decision or action by the Attorney General to ... execute removal orders.'") (citation omitted).

Next, Respondents argue that subsections (a)(5) and (b)(9) of Section 1252 bar this Court's review of Alwawi's petition. Doc. 7, at 4. Section 1252(a)(5) states that the court of appeals is the "sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter" except for subsection (e). Alwawi is not seeking review in this Court of his removal order. So subsection (a)(5) doesn't apply.

Under Section 1252(b)(9), which again, is located under the section heading "judicial review of orders of removal":

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final

> order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under Section 2241 of Title 38 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).

The Supreme Court has "described § 1252(b)(9) as a 'zipper clause' which "consolidate[s] 'judicial review' of immigration proceedings into one action in the court of appeals." *St. Cyr*, 533 U.S. at 313.[6] But the Court has made clear that "it applies *only* '[w]ith respect to review of an order of removal under subsection (a)(1).'" *Id*. (emphasis added). As a result, "§ 1252(b)(9) does not clearly apply to actions brought pursuant to the general habeas statute, and thus cannot repeal that statute either in part or in whole." *Id*. at 314; *see id*. at 302 (noting that the writ of habeas corpus historically "encompassed detentions based on errors of law, including the erroneous application or interpretation of statutes"); *see also Ozturk*, 136 F.4th at 399. Here, Alwawi is not challenging an order of removal. Respondents therefore have not shown that section 1252(b)(9)'s jurisdictional-bar applies to Alwawi's petition.

---

[6] Congress amended the Immigration and Nationality Act in response to *St. Cyr*, to eliminate habeas as a method to review final orders of removal for criminal aliens. *See* REAL ID Act of 2005, Pub. L. 109-13. Div. B, § 106, 119 Stat. 231; *Nasrallah v. Barr*, 590 U.S. 573, 580 (2020). Importantly, although "the Real ID Act eliminate[d] a district court's jurisdiction over habeas petitions challenging final orders of removal," it "did not eliminate a district court's jurisdiction to review habeas petitions challenging an alien's detention." *Ferry v. Gonzales*, 457 F.3d 1117, 1131 (10th Cir. 2006).

For all the reasons stated, the Court should find that it possesses jurisdiction to consider Alwawi's Petition challenging the constitutionality of his detention.

### 2. *The concept of administrative exhaustion does not bar review of Alwawi's petition*

Respondents argue that the Court should dismiss Alwawi's petition because he failed to exhaust administrative remedies. Doc. 7, at 7. Unfortunately, the parties' briefing on this point leaves a great deal to be desired. Alwawi, who is represented by counsel, comes close in his petition to implying that his 90-day removal period, *see* 8 U.S.C. § 1231(a)(1), has expired. *See* Doc. 1, at 4–5, 7. But although he says that he hasn't received a bond hearing, he also doesn't claim that he has asked for one. *See id.* at 2; *see also* 8 C.F.R. §§ 241.3(a) (requiring detention during the removal period); 241.4 (concerning custody and release determinations "beyond the removal period"). For their part, Respondents have phoned-in a three-paragraph argument, failing to add anything useful to aid the Court in its consideration of their assertion that the Court should dismiss for failure to exhaust.

For starters, Respondents don't explain whether there is a statutory exhaustion requirement, which the Court would be bound to honor, or whether they are relying on prudential exhaustion. *See McCarthy v. Madigan*, 503 U.S. 140, 144–45 (1992); *Bangura v. Hansen*, 434 F.3d 487, 493–94 (6th Cir. 2006). And assuming there is no statutory exhaustion requirement, Respondent also don't explain how to evaluate whether the Court should impose a prudential

11

exhaustion bar. *McCarthy*, 503 U.S. at 145–49. In fact, Respondents don't mention 8 C.F.R. § 241.4 or assert that a mechanism exists for Alwawi to challenge his detention, *as opposed to the denial of his motion to reopen. See Joseph Forrester Trucking v. Dir., Off. of Workers' Comp. Programs*, 987 F.3d 581, 587 (6th Cir. 2021) (holding that absent "a statutory mandate requiring exhaustion," the Court will "consider … regulatory exhaustion," which "arises from reasonable claims-processing rules promulgated by an agency. So long as those agency regulations comport with the implementing statute, we will honor their enforcement by the agency"); Doc. 7, at 8.

Instead, Respondents say that "[i]n similar habeas petitions filed in this district, other judges have dismissed for failure to exhaust administrative remedies." *Id.* at 7. But all but one of the cases that they cite concern non-citizens who were denied bond during the pendency of their removal proceedings. *See id.* (citing *Amaya-Velis v. Raycraft*, - - F. Supp. 3d - -, No. 4:26-cv-73, 2026 WL 100596 (N.D. Ohio Jan. 14, 2026); *Tecum Pastor v. Dir. of Detroit Field Off., U.S. Immigr. & Customs Enf't*, - - F. Supp. 3d - -, No. 4:25-cv-02761, 2025 WL 3746495 (N.D. Ohio Dec. 24, 2025); *Monroy Villalta v. Greene*, 794 F. Supp. 3d 528 (N.D. Ohio 2025); *Mendoza v. Raycraft*, No. 4:25-cv-2183, 2025 WL 3157796 (N.D. Ohio Nov. 12, 2025); *Ba v. Dir. of Detroit Field Off.*, No. 4:25-cv-2208, 2025 WL 2977712 (N.D. Ohio Oct. 22, 2025), *reconsideration denied*, 2025 WL 3264535 (N.D. Ohio Nov. 24, 2025); *Laguna Espinoza v. Dir. of Detroit Field Off., U.S. Immigr. & Customs Enf't*, No. 4:25-

cv-2107, 2025 WL 2878173 (N.D. Ohio Oct. 9, 2025); *Hernandez Torrealba v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-01621, 2025 WL 2444114 (N.D. Ohio Aug. 25, 2025)). And the other, *Hernandez Torrealba*, concerned a non-citizen who challenged authorities' decision to place her in expedited removal proceedings and her request for bond during her administrative appeal. *See* 2025 WL 2444114, at *1–4, 9. So none of the cases that Respondents cite support their assertion that "[i]n similar habeas petitions filed in this district, other judges have dismissed for failure to exhaust administrative remedies." Doc. 7, at 7.

Respondents also say that the Court should "require that [Alwawi] exhaust his appeal to the [Board] before pursuing the instant matter." *Id.* at 8. But whether Alwawi's appeal of the denial of his motion to reopen is pending is a separate question from whether he should be detained pending his removal.

Without guidance from the parties, the Court is left to guess whether there is a mechanism that would allow Alwawi to exhaust a challenge to his detention. As far as the Court can determine, the District Director for Immigration and Customs Enforcement is obligated to review an alien's custody "at the expiration of the removal period (the 90-day custody review)." Detention of Aliens Ordered Removed, 65 Fed. Reg. 80,281, 80,291 (Dec. 21,

13

2000). But there is no administrative appeal from a custody determination. 8 C.F.R. § 241.4(d). So there is nothing to exhaust.

The Court should thus reject Respondents' exhaustion argument.

3. *The merits*

Alwawi argues that his continued detention violates the Due Process Clause of the Fifth Amendment because his removal is not reasonably foreseeable. Doc. 1, at 6–7. He also argues that under 8 U.S.C. § 1231(a), he must be released under an order of supervision. *Id*. at 7; Doc. 8, at 3–4. Respondents assert in their return that "[a]lthough … more than ninety days" have elapsed "since" the immigration judge entered Alwawi's "removal order, 8 U.S.C. § 1231(a)(6) allows ICE to detain [Alwawi] because he is subject to removal pursuant 8 U.S.C. § 1227(a)(1)(B)." Doc. 7, at 8. Following oral argument, Respondents filed a brief clarifying their position and stating that Section 1231(a)(6) applies because Alwawi "is subject to removal pursuant to 8 U.S.C. § 1227(a)(1)(C)(i) because he is an 'alien who was admitted as a nonimmigrant and who has failed to maintain the nonimmigrant status in which the alien was admitted.'" Doc. 13, at 1. More on this clarification below.

It is "fundamental" that "federal courts must consider nonconstitutional grounds for decision" before "reaching any constitutional questions." *Jean v. Nelson*, 472 U.S. 846, 854 (1985). So I will start with Alwawi's statutory claim.

14

### 3.1. Statutory arguments

Ordinarily, an order of removal becomes final when the Board of Immigration Appeals affirms an immigration judge's decision or on the expiration of the time to appeal to the Board. *See* 8 U.S.C. § 1101(a)(47)(B). In the case of a removal order entered *in absentia*, the order is final when entered. *See* 8 C.F.R. § 1241.1(e). So Alwawi's order of removal was final on August 19, 2025. *See* Doc. 7-3.

This brings us to 8 U.S.C. § 1231. Relevant to Alwawi's petition, Section 1231(a) defines the term *removal period* as the 90-day period following "when an alien is ordered removed," during which immigration authorities "shall remove the alien from the United States." 8 U.S.C. § 1231(a)(1)(A). Putting inapplicable circumstances aside, this period begins when "the order of removal becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i). Immigration authorities "shall detain the alien" during this 90-day period. 8 U.S.C. § 1231(a)(2)(A).

Once the removal period expires, things changes. "If the alien does not leave or is not removed within the removal period, the alien, pending removal, *shall be subject to supervision* under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3) (emphasis added). The command in Paragraph (3) is subject to an exception in Paragraph (6), which provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General

15

> to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

The parties agree that Alwawi's removal period started on August 19, 2025. They also therefore agree that his removal period expired 90 days later in November. Given that (1) Alwawi's ground of removal, 8 U.S.C. § 1227(a)(1)(B), is not listed in Section 1231(a)(6), and (2) Section 1231(a)(3) commands that aliens who are still physically in the United States after their removal period "shall be subject to supervision," one might wonder what we are doing here.

Respondents' answer to this question is brief:

> Here, Petitioner's order of removal was final as of August 19, 2025. Although it is more than ninety days since that removal order, 8 U.S.C. § 1231(a)(6) allows ICE to detain Petitioner because he is subject to removal pursuant 8 U.S.C. § 1227(a)(1)(B). ICE therefore has statutory authority to detain Petitioner to effectuate his removal order from the United States.

Doc. 7, at 8–9.

During oral argument, I asked counsel about the assertion that the Government's detention authority in Section 1231(a)(6) applies *because* Alwawi "is subject to removal pursuant 8 U.S.C. § 1227(a)(1)(B)." Specially, I noted the fact that Section 1227(a)(1)(B)—the basis for Alwawi's removal order—is not listed among provisions in Section 1231(a)(6). Respondents' counsel requested and received the chance to file a supplemental brief on this

16

issue. As noted, Respondents in that submission now say that Section 1231(a)(6) applies "because [Alwawi] is subject to removal pursuant to 8 U.S.C. § 1227(a)(1)(C)(i) because he is an 'alien who was admitted as a nonimmigrant and who has failed to maintain the nonimmigrant status in which the alien was admitted.'" Doc. 13, at 1 (quoting 8 U.S.C. § 1227(a)(1)(C)(i)).

Alwawi, however, has never been charged with removability under Section 1227(a)(1)(C)(i) and he has never been ordered removed on that ground. It may be that immigration authorities *could have* charged and proved that Alwawi is removable on that ground. But the simple fact is that the immigration judge did not order Alwawi's removal on that basis. So whether Respondents' counsel thinks that authorities could "subject [him] to removal pursuant to 8 U.S.C. § 1227(a)(1)(C)(i)," is beside the point. Alwawi is not currently, as Section 1231(a)(6) requires, "removable under section 1227(a)(1)(C)."

During oral argument, Respondents argued that Alwawi's detention is authorized under 8 C.F.R. § 241.4, which is titled "Continued detention of inadmissible, criminal, and other aliens beyond the removal period." Hearing at 2:09:15–21, Alwawi v. Sec'y of Dep't of Homeland Sec., No. 3:26-cv-0375 (March 12, 2026). And they say that under Section 241.4, Alwawi is not entitled to a custody review until he has been detained for 90 days. *Id*. at 2:09:26–40.

Even putting aside Respondents' threshold failure to cite statutory authority for Alwawi's current detention, particularly in light of the command

17

in Section 1231(a)(3) that aliens in his shoes be released, there is another problem with Respondents' line of argument. Section 241.4 requires immigration authorities to review whether an alien should be released on supervision or held past the removal period. *See* 8 C.F.R. § 241.4(a), (h)(1), (h)(2), (k)(2). Authorities must conduct that review before "the expiration of the removal period," "or as soon as possible thereafter, allowing for any unforeseen circumstances or emergent situation." *See* 8 C.F.R. § 241.4(h)(1), (k)(1)(i), (k)(2)(iv).

Here, Alwawi was not detained until after his removal period expired. Authorities thus could have reviewed his detention before his removal period expired. Respondents, however, believe that they get a new 90-day clock for an alien who is first detained after the expiration of the removal period. But nowhere does the regulation say that. Section 241.4 does not say that, in the case of an alien first detained after the expiration of his removal period, authorities get 90 days from the date detention starts to review his custody. Instead, Section 241.4 directs that the review must occur "as soon as possible" after the removal period's expiration, "allowing for any unforeseen circumstances or emergent situation." *See* 8 C.F.R. § 241.4(h)(1), (k)(1)(i), (k)(2)(iv).

Respondents have not pointed to any "unforeseen circumstances or [an] emergent situation" that has prevented review of Alwawi's detention in the over two months since he was detained. And whatever "as soon as possible"

18

means in a close case, it must mean sometime earlier than now, over two months since Alwawi's detention began. So, even if Section 1231(a)(3) did not require Alwawi's release, 8 C.F.R. § 241.4 requires authorities to review Alwawi's custody.

### 3.2 Constitutional arguments

If the Court reaches Alwawi's constitutional argument, Respondents are on stronger grounds than as to Alwawi's statutory argument. In *Zadvydas*, the Supreme Court rejected the argument that under Section 1231(a) the Government could detain an alien indefinitely after his removal period. 533 U.S. at 689–90. It added that whether detention after the removal period is reasonable depends on whether an alien's removal is "reasonably foreseeable." *Id.* at 699–700. After remarking that it "believe[d] … that Congress [had] previously doubted the constitutionality of *detention* for more than six months," the Court provided a rule:

> After this 6–month period, once the alien provides *good reason* to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701 (emphasis added).

19

In other words post-final-removal-order detention is presumptively reasonable for six months. *After* that six-month period of detention, a burden-shifting framework applies in which the initial onus is on the detained alien to provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." If the alien makes that showing, the Government must respond with "evidence sufficient to rebut that showing."

Given *Zadvydas*, Alwawi's constitutional argument fails. The Supreme Court said that six months of post-final-removal-order detention is presumptively reasonable. Alwawi has been detained for less than three months.

And even if Alwawi had been detained for six months, he has not "provide[d] good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future." Instead, he's merely provided his counsel's unsupported, conclusory assertion that his removal is not likely. Doc. 1, at 1. Whatever *good reason* means in this context, it must mean more than an unsupported assertion.[7] This is especially so here where Respondents have presented evidence that Alwawi's removal is reasonably foreseeable. *See* Doc. 7-1, at 3.

If the Court reaches Alwawi's constitutional argument, the Court should reject it.

---

[7] In *Zadvydas*, there was a record of the Government's efforts to deport Zadvyas (the terms *deport* or *deportation* applied before April 1, 1997). *See* 533 U.S. at 684–85.

20

**Conclusion**

The Court should conclude that Alwawi's continued detention is not authorized under 8 U.S.C. § 1231. It should therefore grant Alwawi's petition.

Dated: March 17, 2026

/s/James E. Grimes Jr.
James E. Grimes Jr.
U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).